SAMUEL, Judge.
This is a suit for death benefits and medical expenses due plaintiffs as beneficiaries under a group life and health insurance contract allegedly issued to Jack Neil-son, Inc. Defendant denied the claim on these grounds: (1) the policy never became effective; and (2) the insured was ineligible for inclusion in a group policy even had it issued. After trial on the merits there was judgment in favor of the defendant and against the plaintiffs, dismissing their suit. Plaintiffs have appealed.
On October 20, 1965, Laurie Boswell, an insurance broker representing the Neilson corporation, discussed issuance of a group policy with defendant’s district representative Jon Stufflebeem. Boswell explained his client’s group policy had been cancelled by another insurer as of September 1, 1965 because it failed to maintain the minimum number of twenty-five eligible employees and officers required for group insurance. Before consulting defendant’s representative, Boswell attempted to place the risk with Louisiana and Southern Life Insurance Company when the employment level exceeded twenty-five. Although the business was not placed with that company, Boswell had obtained enrollment cards from twenty-five prospective employees to be included in the group on Louisiana and Southern forms. The record reflects it is a standard procedure in the insurance industry to require signed enrollment cards from each employee to be covered under any group policy. The card contains information on dates of birth and employment, name of insured, beneficiaries and/or dependents, marital status, etc. The card does not give the home address of the employee to be covered.
Among the cards submitted was that of Mrs. Jessie Neilson, the 71 year old mother of the president, plaintiff Jack Neilson. The present suit is the claim stemming from her hospitalization and death in November, 1965. Because of her advanced years Boswell asked if she would be included in the group policy. He told Stuf-flebeem she was a vice president of the corporation but that she did not pound a typewriter or punch a clock. Defendant’s representative responded she could be included despite her age as long as she participated actively in the conduct of the business and devoted 30 hours per week to that business.
Following this meeting Stufflebeem wrote a letter to Boswell confirming the verbal agreement of the previous day, which plaintiffs contend is an unqualified acceptance of the Neilson group as of October 20, 1965. Defendant asserts it is *153 merely an agreement to issue a group policy, conditioned upon the employer’s ability to furnish proof of eligibility.
The two questions before the trial court are also before us. We find it unnecessary to consider the first, that the policy never became effective (plaintiffs contend it did become effective as a result of the October 20 letter which constituted a binder). Even assuming, but not deciding, the letter did constitute a binder and the policy did become effective as of the date of the letter, the judgment dismissing plaintiffs’ suit is correct because in our opinion the second question, whether the decedent was either eligible as an insured under the group policy or, alternatively, accepted by the defendant as a risk despite her ineligibility must be decided in favor of the defendant.
To be eligible for coverage under the group policy any employee or officer was required to work actively in the conduct of the business. This is a standard requirement in the industry and it is one of the only methods by which a life insurer can establish evidence of insurability for a group of employees. Unlike ordinary life insurance where the insurer requires medical examinations and more specific information from the insured before assuming the risk, the group policy insurer relies upon the presumption that one who can work actively is an insurable risk. This cardinal principle of underwriting group insurance, testified to by Richard Schultz, defendant’s group underwriting supervisor, was not challenged by plaintiffs.
The record reflects Mrs. Jessie Neilson had no duties with the corporation. Although Mrs. Neilson was nominally a vice president, one of the plaintiff corporation’s secretaries testified she had no duties with the company and received no compensation for services. The Neilson office is located in New Orleans and Mrs. Neilson resided some 300 miles away in Ruston, Louisiana. When her son was questioned as to her activities or duties with the company, he responded it was her duty to “listen to him when he wanted to talk”. In addition, it is apparent she would have been physically incapable of performing duties for the corporation even had any been assigned after the time the binder went into effect. She was hospitalized for tests in Ruston on October 26, 1965 and died some three weeks later of a heart attack.
Having determined she was not eligible because she did not actively participate in company activities, we must next decide whether defendant either expressly or tacitly made an exception in her case.
In the initial discussion of Jessie Neil-son’s insurability on October 20, it will be recalled Boswell pointed out she did not punch a clock or pound a typewriter. In view of the fact that Boswell is an experienced insurance broker, knowledgeable in the principles of underwriting group insurance, we cannot construe this as a full disclosure of Mrs. Neilson’s true condition. After Stufflebeem responded this was acceptable as long as she devoted 30 hours per week to company business, Boswell’s silence thereafter raised the factually incorrect inference that she worked in the business without keeping a set office routine. Nor was Stufflebeem told she lived in Ruston.
After a preliminary application for group insurance was signed on November 1, 1965, the defendant’s home office returned the enrollment cards several days later noting what appeared to them to be irregularities in the signatures. Defendant requested those to be included in the Neil-son group sign new enrollment cards on defendant’s forms. About the same time, defendant attempted to obtain a retail credit report on Mrs. Jessie Neilson but had difficulty contacting her son to furnish the information necessary. This was part of an investigation to determine whether she would be accepted as a risk.
When the enrollment cards were returned, Stufflebeem so advised Boswell. One day before Mrs. Neilson’s death, Boswell brought in three enrollment cards *154 signed by the president, his mother and his wife (also an officer). Stufflebeem wrote this memorandum to Boswell: “3 Neilsons o.k. as soon as we get 22 other cards — I’ll work with what I have and then we’ll get cards on the new ones.”
Plaintiffs urge this memo constitutes acceptance of the three Neilsons as insurable risks. We cannot agree with the contention. At that time defendant was still unaware of how inactive Mrs. Neilson was and they did not learn of her distant residence until the information appeared on the death certificate submitted by plaintiffs in connection with the instant claim.
In our view, Boswell’s statement is not sufficient to constitute a disclosure sufficient to conclude defendant had waived the eligibility requirement in Jessie Neilson’s case. Nor does the record reflect defendant acquired sufficient information about Jessie Neilson on an independent investigation to hold its knowledge of the true facts constituted a tacit waiver of the eligibility requirement in her favor.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.